## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONNECTICUT FAIR HOUSING CENTER | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 20-1775 COMPLAINT |
| v. | ) ) | |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | ) ) ) | |
| Defendant. | ) ) | November 25, 2020 |

### INTRODUCTION

Plaintiff Connecticut Fair Housing Center ("CFHC") hereby alleges:

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, for declaratory, injunctive, and other appropriate relief brought by Plaintiff.

2. By this action, Plaintiff seeks to compel Defendant, U.S. Department of Housing and Urban Development ("HUD"), to release records responsive to a FOIA request properly made by Plaintiff.

3. The FOIA request underlying this action seeks records concerning HUD's practices and procedures for nonjudicially foreclosing on certain HUD-insured mortgages, predominately reverse mortgages made to elderly homeowners.

### PARTIES

4. Plaintiff CFHC is a nonprofit legal services organization that uses FOIA information to serve the public interest. CFHC aims to promote fair lending and fair housing practices.

As such, CFHC works to prevent mortgage foreclosures and supports unrepresented homeowners.

5. Defendant HUD is an agency of the federal government that has possession and control of the records that Plaintiff seeks.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

7. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B).

8. HUD has failed to meet the statutory deadline set by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)-(B). Plaintiff has therefore exhausted all administrative remedies, pursuant to 5 U.S.C. § 552(a)(6)(C).

## FACTS

9. HUD administers the Home Equity Conversion Mortgages ("HECM") program, which insures reverse mortgages made by private lenders, often to low-income seniors. HECMs allow homeowners over sixty-two years old to convert part of their home equity to a loan that typically does not become due until the homeowner dies or moves out of the property.

10. The HECM insurance fund allows lenders to make claims up to a certain amount determined at origination, the maximum claim amount. This is to protect the lender in case the balance of the loan, which is constantly increasing due to interest and other fees, exceeds the value of the property when the loan becomes due, typically when the borrower dies. If the loan balance gets close to the maximum claim amount before the loan is due, meaning the borrower is likely still alive and in the home, the lender can

assign the loan to HUD and make their insurance claim. HUD thereafter takes on servicing responsibilities until the loan becomes due.

11. Although the HECM reverse mortgage program was intended to enable borrowers to live out the rest of their lives in their homes, in actuality, many reverse mortgage borrowers prematurely end up in foreclosure before they are ready to leave their homes. Borrowers are required to pay property taxes, maintain hazard insurance, and keep the property in good repair, and the mortgage documents permit the lender to foreclose with HUD permission if the borrower fails to do so. Due to many factors, such as deceptive marketing by lenders, a historic lack of underwriting for HECM-eligible borrowers, and confusing loan terms, HECMs have a high rate of premature default and foreclosure. In fact, 18 percent of HECMs default for reasons other than death of the borrower, and most of these defaults are due to borrowers missing technical requirements. U.S. GOV'T ACCOUNTABILITY OFF., REVERSE MORTGAGES: FHA NEEDS TO IMPROVE MONITORING AND OVERSIGHT OF LOAN OUTCOMES AND SERVICING ii (Sept. 2019), https://www.gao.gov/assets/710/701676.pdf.

12. Reverse mortgage borrowers who default due to property taxes or lapsed insurance often struggle to navigate the foreclosure process and face adverse impacts if they lose their homes. By definition, these borrowers are elderly, many quite so, and have high rates of physical and cognitive disabilities and serious health conditions. Borrowers' disabilities or health conditions may impact their ability to understand or defend against foreclosure. These borrowers may have health-related needs, such as dementia, that make it imperative that they remain in their homes. Most borrowers are on fixed incomes and already exhausted the equity in their homes when they got the reverse mortgage loan,

sometimes based on a lender's false promise that they could live there payment-free for the rest of their lives. Given the extreme shortage of subsidized housing, especially for people with disabilities, elderly borrowers in foreclosure are at risk of homelessness or placement in a nursing home against their wishes.

13. HECM borrowers can benefit from the "judicial foreclosure" process required under Connecticut law, in which home mortgage lenders may only pursue foreclosures on properties under court supervision, and borrowers can elect to participate in court-supervised foreclosure mediation. This process affords living HECM borrowers a chance to avoid or postpone foreclosure via mutual agreement through the state court system's foreclosure mediation program, which also places an up to eight-month-long stay on the foreclosure process to facilitate the parties' progress to a mutually agreeable foreclosure alternative. The process furthermore affords all borrowers and their heirs the opportunity to raise defenses. A judicial foreclosure process helps ensure that, even when foreclosure is inevitable, the process is orderly and the borrower has time to make other living arrangements.

14. Under Connecticut law, foreclosing plaintiffs may obtain a judgment of foreclosure by one of two means. First, upon motion, a court may order judgment of foreclosure by sale under Conn. Gen. Stat. § 49-24, triggering an auction of a property overseen by a third party. Second, with court approval, lenders may pursue strict foreclosure, causing title to the property to pass to a creditor without an auction on a specified day. The court may use equitable powers to set the terms under which the borrower can redeem their ownership in the property before title transfers to the servicer.

15. Unlike some other jurisdictions, Connecticut law does not recognize "nonjudicial foreclosure," a process in which the lender conducts a sale of the property without commencing an action in court or seeking judicial authorization, except for municipal foreclosures arising out of unpaid property taxes or fees.

16. The Single Family Mortgage Foreclosure Act, 12 U.S.C. § 3751, *et seq.*, purports to authorize HUD to foreclose on all HUD-held single family loans, such as HECMs, "whether or not state law allows non-judicial foreclosures or has a state nonjudicial foreclosure statute." HOUSING AND URBAN DEV., INSTRUCTIONS TO FORECLOSURE COMMISSIONER TITLE II 2, https://www.hud.gov/sites/documents/10-24HSGN4.pdf. Under this process, HUD may pursue non-judicial foreclosures and auction residences with notice mailed to the homeowner just twenty-five days prior to the sale—even in states like Connecticut that allow only for judicially-supervised foreclosures. *See id.* at 3-5 (describing HUD notice policies). HUD's procedures do not provide property owners with HECM loans any opportunity to be heard or the benefit of foreclosure mediation.

17. In the last several years, HUD has caused to be published several notices of nonjudicial foreclosures on homes in Connecticut, despite the state's requirements that lenders pursue judicial foreclosure.

18. HUD's foreclosure practices bypass Connecticut law and violate homeowners' due process rights. Further, HUD has publicized little to no information about the commissioner process behind these nonjudicial foreclosures, despite the fact that they shorten foreclosure proceedings from eight or more months to around one month.

19. On June 30, 2020 CFHC submitted a FOIA request to HUD, numbered 20-FI-HQ-01489, for the "identity of all foreclosure commissioners used by HUD to foreclose on HECMs,"

"data on any and all commissions and other fees received by foreclosure commissioners for HECM foreclosures," and the number of HECM reverse mortgages referred to, initiated by, and foreclosed on through a foreclosure commissioner from 2015 to present.

20. In its request, CFHC sought data regarding the "reason for foreclosure of HECM reverse mortgages," "the age, sex, and race of all homeowners" with HECM mortgages held by HUD through the Federal Housing Administration from 2015 to present, "the length of time property charges were in default," and the "tax and interest advances for HECM loans held by the FHA foreclosed on due to property charge defaults."

21. CFHC further sought any and all policies, procedures, and documents regarding homeowners' ability to cure defaults and regarding the selection and training of foreclosure commissioners, as well as "documentation of HUD's consideration of the impact of the foreclosure commissioner program on fair housing."

22. Finally, the FOIA request included a fee waiver request, as Plaintiff's "FOIA request concern[ed] the operations or activities of the government," and "disclosure of this information [would] likely contribute to an understanding of the subject by the public."

23. On August 12, 2020, William Smith, an employee in HUD's FOIA office, informed an attorney at CFHC, Sarah White, that the FOIA request was "assigned for the Department's subject matter experts to conduct a search for responsive information and a final determination for your fee waiver request." Mr. Smith stated that HUD's FOIA Branch would receive results from the subject matter experts "as soon as possible."

24. HUD has failed to issue a response to the request within twenty business days, as required by FOIA. 5 U.S.C. § 552(a)(6)(A)-(B).

## COUNT I

25. Plaintiff repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

26. Defendant HUD is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession at the time of the request and provide a lawful reason for withholding any materials as to which it is claiming an exception.

27. HUD has failed to act on Plaintiff's request within the twenty business days required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i). Accordingly, Plaintiff is deemed to have exhausted its administrative remedies under FOIA.

28. HUD has no lawful basis for declining to release the records requested by Plaintiff under FOIA.

29. Accordingly, Plaintiff is entitled to an order compelling HUD to produce records responsive to the FOIA request.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

30. Declare that the documents sought by the Request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

31. Order HUD to undertake an adequate search for the requested records and provide those records to Plaintiff within 20 business days of the Court's order;

32. Order Defendant to grant a full fee waiver to Plaintiffs;

33. Award Plaintiff the costs of this proceeding, including reasonable attorney's fees, as expressly permitted by FOIA; and

34. Grant such other and further relief as the Court deems just and proper.

Dated: November 25, 2020
New Haven, CT

Respectfully submitted,

By: /s/_____
Jeffrey Gentes (ct28561)
J.L. Pottenger, Jr. (ct05479)

Isabel Echarte, Law Student Intern          Jerome N. Frank Legal Services
Morgan Savige, Law Student Intern           Organization
Jeff Schroeder, Law Student Intern          Yale Law School
                                            P.O. Box 209090
                                            New Haven, CT  06520-9090
                                            Tel: (203) 432-4800
                                            Fax: (203) 432-1426
                                            jeffrey.gentes@ylsclinics.org
                                            j.pottenger@ylsclinics.org